# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

District Court No. 1:15-cr-00054-RM

UNITED STATES OF AMERICA,

        Plaintiff,

v.

2.  ANN MARIE MCNEAL

        Defendant.

---

**MOTION TO SUPPRESS STATEMENTS AND EVIDENCE**

---

      Defendant, through counsel, hereby moves this Court for an Order suppressing the any and all statements she made to the law enforcement officers in this case. Defendant further moves this Court to suppress all evidence obtained from the search of her home located at 5102 Galley Road lot 131A in Colorado Springs as the direct fruit of the illegally obtained and involuntary statements of the Defendant and because the affidavit was written in reckless disregard of the truth. As grounds:

### Factual Background

1. Defendant in this case is charged with knowingly selling or disposing of a firearm to Phineas McNeal, her son, in violation of 18 U.S.C. §922(d).

2. On November 29, 2014, the Defendant was arrested for obstruction of police after failing to yield to police officers who were trying to subdue her son in the parking lot of a Sportsman's Warehouse in Colorado Springs.

1

3. After her arrest on the misdemeanor charge, Ms. McNeal was transported to the Colorado Springs Police Department. Officers unknown spoke to the Defendant about her relationship with her son, whether he lived with her, and whether she purchased weapons for him, and whether they and ammunition were located in her home. It is alleged this pre-interview formed the basis for a subsequent recorded interview with Ms. McNeal. The video will be supplied to the Court.

4. Once detained in the Sand Creek substation of the Colorado Springs Police Department, Detective Ditzler, a Task Force Officer of the Colorado Springs Police Department interviewed the Defendant. The recorded interview begins with Detective Ditzler securing a consent to search form from the Defendant for her vehicle.

5. Ms. McNeal is holding her head in her hands mumbling to herself about being sick.

6. Detective Ditzler enters the interview room and states that he just finished interviewing "her boy," Phineas. He begins chatting with Ms. McNeal about her family.

7. Detective Ditzler then tells Ms. McNeal that she understands that she is still "under" her *Miranda* rights. Ms. McNeal responds "ok." This is the only reference to Miranda rights on the recording supplied by the government.

8. Detective Ditzler states to Ms. McNeal, "There is ammo at the house." Ms. McNeal does not answer verbally, but makes some type of head gesture. She asks if he wants her to get the gun? Detective Ditzler responds that he is "on the fence" about whether he wants her to get the gun.

9. It appears from the recording that at some point in the past, Detective Ditzler obtained information that Mr. McNeal showed Ms. McNeal how to shoot the .22 revolver, because he asks Ms. McNeal, "who shot most of it (the ammo)." Ms McNeal does not respond. Detective Ditzler states "somebody's lying," and he's just trying to corroborate information he obtained from him (Phineas).[1]

10. Detective Ditzler states "he's shooting as well," which did not elicit a response from Ms. McNeal. He asks "is he shooting"-no response. "How many rounds did you shoot?" No response. He states do you know you can be in a lot of trouble for letting him shoot? No response.

11. Detective Ditzler states Do you think he has other guns to which Ms. McNeal responds, "I don't know."

12. Ms. McNeal states she told Phineas he was not allowed to stay with her.

13. Detective Ditzler repeats how many times did he fire the gun to which Ms. McNeal repeatedly states "I don't know."

14. He asks, "he shot a full cylinder?" She does not respond. Detective Ditzler states, I just want to be sure he's being honest.

15. He asks "when you got in the car, did you give him the gun?" She responds, "no, I put it away." Throughout the interrogation Detective Ditzler refers to the revolver as Ms. McNeal's gun.

16. He states, that Phineas "was staying at your house, remember?" Ms. McNeal responds, "he was watching porn there," and "Phineas stayed outside."

---

[1] Notably, no information about teaching his mother how to shoot was obtained from the interview of Mr. McNeal.

17. He asks if "she'll pass a polygraph whether she gave him the gun." She says yes. She says Phineas moved out of the house a long time ago, but some of things are still there.

18. He states the parole GPS shows he spends nights there. She states he does not stay there, sleeps outside and sleeps there sometimes.

19. Detective Ditzler states it's enough for a federal crime that she he touched the gun, and "you told me he touched the gun."

20. Detective Ditzler tells her we found out you (Phineas and Ms. McNeal) stole some things at Wal-Mart. Ms. McNeal states they already took care of that (she was issued a trespass warning for taking a $4.18 item).

21. Not having elicited the information he sought, Detective Ditzler begins the threaten Ms. McNeal, "you're going to wind up in federal prison." "Is that why you're protecting him or lying… right now you're going to federal prison." "You're only facing a state case now, if you lie, we will indict you." Following the threats, Ms. McNeal states there is "another gun there, an automatic." She tells Detective Ditzler she bought it at a pawnshop.

22. Detective Ditzler accuses her of being dishonest because you would have answered another way the other "seventeen times" I asked you that question. Then he says, "let me keep you out of trouble here." He states "I know for a fact the pawn shop gun was for Phineas."

23. Then Ms. McNeal talks about her leg hurting, and Detective Ditzler states, who shot you, Phineas? Are you buying guns for him because he's threatening you?" Ms. McNeal has stopped responding to questions at this point, it is over an hour

4

into the interview. Detective Ditzler asks her if she wants water. Ms. McNeal is crying and moaning. Detective Ditzler leaves the room and gets Sergeant Chanz, who tells Ms. McNeal, "we are just here to help you dear." He tells Ms. McNeal he must inspect her leg for the medical personnel. With Ms. McNeal not moving, Detective Ditzler states "just look at me if he's forcing you to buy guns for him." She does not respond.

24. He states, "you have to talk with me," and "Do you understand you have to talk to me." She still is unresponsive. He continues to interrogate about the injuries to her leg asking, which gun did he shot you with?" She continues to be unresponsive.

25. Sergeant Chanz then threatens Ms. McNeal stating, falsely influencing a public official is a felony. "Are you going to take the fall or are you going to do the right thing." Detective Ditzler states "it's our job to exonerate you." Ms. McNeal then tells them there are three guns in the house, including a shotgun that has been there a long time. Detective Ditzler states "I never said you were arrested federally, right now it's just state charges." Ms. McNeal states I guess I am just guilty.

## Legal Discussion

26. A defendant has a constitutional right not to incriminate herself. U.S. CONST. Amend V. A defendant's statement to law enforcement personnel may be challenged on the ground that it was not voluntarily made. See, e.g., *Arizona v. Fulminante*, 499 U.S. 279, 287-291 (1991). Coercive activity by law enforcement is necessary in the voluntariness inquiry. *Colorado v. Connelly*, 479 U.S. 157,

167 (1991).  In determining whether a defendant's statement is obtained in violation of his rights against self-incrimination, the voluntariness inquiry should focus on whether the statement was extracted by, *inter alia*, a direct or implied promise by Government personnel.  *United States v. Fountain*, 776 F.2d 878, 881 (10th Cir. 1985)(citing, e.g., *Malloy v. Hogan*, 378 U.S. 1 (1963)).  In making the foregoing determinations, the court must view the totality of the circumstances.  *Arizona v. Fulminante, supra*.  The Government has the burden to establish a valid waiver of constitutional rights.  See, e.g., *Michigan v. Jackson*, 475 U.S. 624, 633 (1986).

27. Where law enforcement agents promise that a defendant's statement will not be used against him, any subsequent statement made by the defendant in reliance on the promise is not voluntarily made.  *United States v. Walton*, 10 F.3d 1024, 1030 (1993); *United States v. Menesses*, 962 F.2d 420, 428 (5th Cir. 1992).

28. The prosecution may not use inculpatory or exculpatory statements obtained as a result of a custodial interrogation of a defendant unless it demonstrates that those statements are preceded by an adequate advisement of the privilege against self-incrimination and the defendant's right to counsel and thereafter the defendant knowingly waives those rights.  *Miranda v. Arizona*, 284 U.S. 436, 444-445, 467-476, 479 (1966).  "Custody" for *Miranda* purposes occurs when a person's freedom of action is curtailed to a degree associated with a formal arrest.  *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).

29. In this case there is no question Ms. McNeal was in custody from the time she was arrested on the scene for obstruction.  The complaint she received was on a

6

summons form, but on the form instead of her signature, the officer wrote, "bond to be posted with the court."

30. In the interview with Mr. McNeal, Detective Ditzler reads Mr. McNeal his *Miranda* rights from a department form and asks whether he wants to waive them. With Ms. McNeal, Detective Diztler merely states, "you understand you are still under *Miranda*" to which Ms. McNeal responds only "o.k." This is not an adequate advisement or an adequate waiver.

31. The reason for the *Miranda* warning is because without that safeguard, a defendant's will to resist may be overcome and he would be compelled to speak. *Miranda*, 384 U.S. at 467. In this case, it is apparent from the video that is exactly what happened. After being barraged with accusations for a lengthy period of time while feeling sick, Ms. McNeal remained hunched over and silent for much of the second half of the interview. She complained here leg was hurting. Only after the Detective and the Sergeant threatened her by stating "if you lie, we will indict you," and she will be charged with the felony of influencing a public official, did Ms. McNeal start talking about the weapons in her home. The admissions came also after the sergeant stated, we're just here to help you dear," and the detective stated, "it's out job to exonerate you." Given the paucity of the *Miranda* advisement and the waiver, it is apparent that not only was *Miranda* violated, but Ms. McNeal's will was overcome and her statements were involuntary.

32. Defendant has a Constitutional right to be free from unreasonable searches and seizures. U.S. CONST Amend. IV. A search warrant may only issue upon a

truthful affidavit setting forth facts and circumstances establishing probable cause. *Franks v. Delaware*, 438 U.S. 154, 164-165 (1978). A defendant making a veracity challenge must show with particularity the items believed to be false. *Id.* At 174-175. If the items shown to be false are excised, then only if the affidavit still demonstrates probable cause, can the search be upheld.

33. The affidavit supporting the search warrant is attached hereto. It states that Ms. McNeal admitted in a *mirandized* interview that after purchasing the .22 caliber pistol, Ms. McNeal allowed her son to "physically handle the gun" in the car. In the only recording provided by the government of the interview, she denied that she gave it to him to hold, stating, "I put it away." Also in the affidavit, the police stated he held the firearm to show her how to shoot it, but in the interview she did not state her son physically held the weapon, despite the barrage of questioning. Lastly, Ms. McNeal did not state her son threatened her to purchase the .22 rifle for him. The intense barrage of leading question accusations by law enforcement during the interview, which drew little, if any, affirmative response from Ms. McNeal are not the affirmative declarations represented by Officer Ray in his search warrant affidavit. Once the falsities are excised, the affidavit does not state probable cause that Ms. McNeal knowingly transferred firearms to her son in derogation of the law.

34. In addition, all the information leading to the discovery of firearms and ammunition in Ms. McNeal's home was the product of her involuntary and illegally obtained statement. As such, the evidence must be suppressed as fruit of

8

the poisonous tree.  Brown v. Illinois, 422 U.S. 590, 604, 95 S.Ct. 2254, 2262-63 (1975)(citing Wong Sun v. United States, 371 U.S. 471 (1963)).

### Conclusion

35.     Wherefore, Defendant respectfully requests that this Court grant the motion for an Order suppressing her statements and the evidence obtained from the warrant to search her home.


Dated: August 20, 2015                    Respectfully submitted,


 s/ Jonathan S. Willett
Jonathan S. Willett, #16264
255 Canyon Boulevard, Suite 100
Boulder, Colorado 80302
(303) 832-5648
jwillett@willettlaw.net

### CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2015, a true and correct copy of the foregoing **Motion** was served with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Kurt.bohn@usdoj.gov


s/ Jonathan S. Willett
For Law Offices of Jonathan S. Willett